UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

LVC SURGICAL CENTER, LLC, a Nevada Limited Liability Corporation;

Plaintiff,

v.

INSIGHT SURGICAL EQUIPMENT CO, an Arizona Corporation; DOES 1 through 10, inclusive; and ROE BUSINESS ENTITIES I through X, inclusive,

Defendant.

Case No. 2:19-cv-01734-RFB-BNW

ORDER

## I. INTRODUCTION

Before the Court is Plaintiff's Renewed Motion for Preliminary Injunction (ECF No. 20), Defendant's Response (ECF No. 23), and Plaintiff's Reply (ECF No. 27). Because Plaintiff has failed to demonstrate irreparable harm, that the balance of the equities favors Plaintiff, and that a preliminary injunction is in the public interest, the Court denies the Motion.

## II. PROCEDURAL BACKGROUND

Plaintiff filed the operative complaint in this action in the Eighth Judicial District Court on September 12, 2019, asserting several causes of action against Defendant related to a contract to deliver equipment for use in Plaintiff's ambulatory surgical center. ECF No. 1-2. Defendant filed the Petition for Removal to federal court on October 4, 2019. ECF No. 1. On October 7, 2019, Plaintiff filed a Motion for Preliminary Injunction. ECF No. 3. The Court ordered briefing on the motion, ECF No. 8, and a hearing was held on October 16, 2019, ECF No. 13. The Court denied

the motion without prejudice at the hearing, referred the action to the magistrate judge for the purposes of settlement mediation, and ordered the parties to file a joint status report "identifying each piece of equipment under the contract, the relevant industry standard or certification protocol for the identified equipment if applicable, when the equipment must be certified if required and who is responsible for ensuring that it is compliant, and a detailed description of the certification process by the State of Nevada," as well as any indication of disagreement as to these items. Id. A settlement conference was ordered for January 3, 2020. ECF No. 14. On October 21, 2019, Defendant filed a Notice of Related Cases. ECF No. 15. On October 30, 2019, the parties filed separate status reports. ECF No. 16, 17. On November 4, 2019, Plaintiff filed the instant motion pursuant to the Court's Order issued on October 31, 2019 in response to the parties' respective status reports (ECF No. 18). ECF No. 20. Defendant responded on November 13, 2019, ECF No. 23, and Plaintiff replied on November 15, 2019, ECF No. 27.

### III.  FACTUAL BACKGROUND

The controversy arises out of an alleged breach of contract. Plaintiff alleges that Defendant failed to provide conforming equipment for use in Plaintiff's ambulatory surgical center in accordance with their contract, and that delivery of the equipment was continually delayed. Defendant disputes the equipment was non-conforming and states that the delay was the consequence of Plaintiff's own conduct. With regard to whether the equipment conformed to the terms of the contract, the parties disagree, *inter alia*, about which standards apply to the certification of the equipment for use in the ambulatory surgical center, whether those standards have been satisfied for the delivered equipment, whose responsibility it is to ensure compliance with those standards, and when the equipment must be deemed in compliance.

The Court makes the following factual findings. On May 28, 2018, the parties entered into the contract for Defendant to deliver to Plaintiff specified goods for use in the ambulatory surgical center. The original delivery date was delayed but an agreement on a revised delivery date was reached on or about April 19, 2019. ECF No. 20 at 3. Defendant provided a projection for delivery dates beginning May 1, 2019 that asserted all equipment would be delivered by June 14, 2019. Id. Plaintiff asserts the delivery of this equipment was continually delayed and has not yet been

provided in full. Id. at 4. Plaintiff further asserts the equipment has not been certified for use in the ambulatory surgical center in accordance with the various certification procedures, resulting in delay of the opening of the surgical center. Id. at 4-13.

On June 10, 2019, Plaintiff sent Defendant a letter proposing new dates for items as yet undelivered under the original schedule. Id. at 3. Plaintiff also told Defendant in this letter that it expected perfect tender on or before June 14, 2019. Id.

On June 17, 2019, Plaintiff sent Defendant an email asking for an update relating to the delivery of the remaining equipment, id. at 4, and on June 25, 2019 sent another email requesting an update on delivery with notice that "22 separate pieces of equipment or 51% of the order still had not been delivered," id. On July 31, 2019, Plaintiff asserts equipment was still outstanding. Id. Plaintiff gave Defendant a new deadline of August 21, 2019 to tender the certified equipment, then an additional extension until August 28, 2019. Id. On August 23, 2019, Plaintiff sent Defendant a demand for adequate assurances of performance for delivery by August 28, 2019 and put Defendant on notice of its failure to provide conforming equipment that would be fit for the surgical center's particular purpose. Id.

Defendant's sales representative, Brian Case, sent an email on August 27, 2019 acknowledging receipt of an Excel spreadsheet listing delivered items and their deficiencies. Id. On August 29, 2019, due to Defendant's alleged failure to address the demand letter and/or provide the missing equipment, Plaintiff declared default and demanded that Defendant remove the allegedly non-conforming equipment from the surgical center. Id. at 6.

On September 3, 2019, Plaintiff's attorney provided Defendant's counsel a list indicating Defendant had only delivered 61% of the ordered equipment, of which 70% was "defective/not certified," and told Defendant that an autoclave Defendant installed was defective because it was not certified by the State of Nevada and would subject Plaintiff to state fines of up to $5,000. Id. at 6-7. Plaintiff reiterated this message on September 5, 2019 and Defendant's counsel stated Defendant would have the boiler removed. Id. at 8. Plaintiff asserts that it told Defendant on September 24, 2018 via email of the applicable requirements for autoclave installation and

certification. Id. Plaintiff argues Defendant failed to meet these requirements and that on September 6, 2019, attempted to install an autoclave that had not been certified by Nevada. Id.

Defendant states Plaintiff is responsible for the delay in delivery and asserts a slightly different timeline of events. On March 13, 2018, Defendant tendered an invoice memorializing the agreement with Plaintiff and requested a 60% deposit pursuant to standard practice. ECF No. 23 at 3. This deposit was paid in June 2018 after some delay. Id. at 3-4. LVC principal Ngan Le informed Defendant shortly thereafter that construction of the surgical center was delayed and the October 2018 installation deadline would not be met. Id. at 4.

In October 2018, another LVC principal, Dr. Thomas Le, requested a meeting to establish a second quote for another medical center which was finalized later that month. Id. The deposit for the second surgical center was negotiated as a loan. Id. Defendant asserts Plaintiff's architects caused a seven-month delay in preparing the surgical center for an issuance of a Certificate of Occupancy, which was issued in May 2019. Id.

After issuance of the Certificate of Occupancy, Defendant delivered and installed an autoclave which Defendant believes, in contrast with Plaintiff, is compliant with Nevada standards. Id. at 5. Defendant asserts that throughout July 2019, approximately $298,000 worth of equipment and the "C-Arm" was delivered and installed. Id. From July to August 2019, Defendant asserts that it worked to deliver the remaining equipment but received conflicting instructions from Ngan and Dr. Thomas Le. Id. at 6. Defendant states Ngan Le instructed Defendant not to deliver additional medical equipment until the permits were obtained for the C-Arm and autoclave. Id. at 5. Defendant asserts the C-Arm was deemed safe on August 29, 2019 and a new autoclave was ordered and ready for overnight delivery as of September 3, 2019. Id. Defendant states that on September 6, 2019 the boiler portion of the autoclave was removed. Id. Defendant disputes that the original autoclave was unfit for its intended use. Id.

Brian Case met with Dr. Thomas Le and Ngan Le and received instructions on how to proceed with delivery of the outstanding equipment. Id. at 6. On September 6, 2019, Defendant's counsel, Ernest Bustamante, responded to Plaintiff's demand letter and informed Plaintiff's counsel that Defendant was receiving conflicting instructions which made it difficult to determine

who had authority to speak for LVC. Id. Bustamante also provided a proposed timeline for the remaining items to be delivered and Defendant asserts that until that time, it was prohibited from completing delivery. Id. at 5-6. Defendants states that previously, on August 27, 2019, Brian Case attempted to schedule delivery of the remaining equipment and that on August 28, 2019, Ngan Le responded that he would forward the email to his attorney. Id. at 6.

### IV. LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. 7, 20 (2008)).

"A preliminary injunction can take two forms. A prohibitory injunction prohibits a party from taking action and preserve[s] the status quo pending a determination of the action on the merits. A mandatory injunction orders a responsible party to take action." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 878-79 (9th Cir. 2009). A mandatory injunction "goes well beyond maintaining the status quo pendente lite [and] is particularly disfavored. The district court should deny such relief unless the facts and law clearly favor the moving party." Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (alteration in original) (citation and internal quotation marks omitted). "The status quo means the last, uncontested status which preceded the pending controversy." N.D. ex rel. Parents v. Haw. Dep't of Educ., 600 F.3d 1104, 1112 n.6 (9th Cir. 2010) (citation and internal quotation marks omitted).

A court may only issue a preliminary injunction "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). District courts have discretion in setting the amount of bond. Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1126 (9th Cir.

2004). A likelihood of success on the merits can "tip[] in favor of a minimal bond or no bond at all." People of State of Cal. v. Tahoe Reg'l Planning Agency, 766 F.2d 1319, 1326 (9th Cir. 1985).

## V.     DISCUSSION

### A. Preliminary Injunction

Plaintiff requests that the Court grant the instant motion and direct Defendant to remove all of the equipment or permit Plaintiff to remove the equipment at Defendant's cost. Plaintiff commits the vast majority of its brief to the first prong of Winter: a likelihood of success on the merits. The Court need not consider whether Plaintiff has succeeded in satisfying this element for a preliminary injunction however, as the Court finds that Plaintiff has not satisfied Winter's remaining prongs, including irreparable harm, balance of the equities, and that the public interest favors an injunction.

"[A] preliminary injunction usually will be denied if it appears that the applicant has an adequate alternate remedy in the form of money damages or other relief." 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948.1 (3d ed. 2019). "The basis of injunctive relief in the federal courts is irreparable harm and inadequacy of legal remedies." Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202 (9th Cir. 1980) (citing Sampson v. Murray, 415 U.S. 61, 88 (1974)). "The temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury . . . The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson, 415 U.S. at 90 (internal citations and quotations omitted). "[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) (citation omitted).

Plaintiff devotes a single paragraph to the issue of irreparable harm, asserting in its original motion that "the nonconforming Equipment substantially impaired the value of the rest of the Equipment since LVC cannot use the Equipment for the [ambulatory surgical center]." ECF No.

20 at 25-6. Plaintiff then goes on to reiterate its legal right to reject the equipment and demand its removal, as well as to state that removal is needed in order to commence work with another medical equipment supplier to complete the ambulatory surgical center. Id. at 26. Defendant argues in its opposition that Plaintiff's assertions fail to illustrate "immediate threatened harm" as required. ECF No. 23 at 19 (quoting Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988)). In its reply, Plaintiff states it is losing money as a consequence of a delayed opening, that these losses will "effectively put LVC out of business," and asserts, without citation, that damages are not an adequate remedy as Defendant cannot satisfy a judgment in Plaintiff's favor. ECF No. 27 at 11.

The harm Plaintiff has asserted—loss of income as a consequence of its inability to open the ambulatory surgical center—can be adequately addressed with legal remedies. More importantly, Plaintiff's own admissions make plain that Plaintiff need not resort to this Court to end its predicament. Plaintiff indicates in its brief that it has engaged in communication with Defendant about how it plans to implement moving the equipment to storage in the event Plaintiff "elect[s]" to do so. Ex. 31 at 1, ECF No. 20. Additionally, Plaintiff has indicated that it has already contacted and sought quotes from moving companies for this purpose. ECF No. 20 at 27. Moreover, in its status report, Plaintiff acknowledged these preparations, and stated, "Unless this Honorable Court is inclined to reconsider the Mandatory Injunction, then LVC will likely need to resort to this measure to mitigate its damages." ECF No. 16 at 13. Plaintiff further states in this status report that it "prefers to have a Court Order setting forth the requirements related to the removal of the Equipment" but in the event the instant motion is denied, Plaintiff "will have to pursue the self-help remedies permitted under Nevada law." Id. at 14. These assertions suggest that Plaintiff seeks relief from this Court not as a last resort, but as a convenience, and tacit judicial endorsement of Plaintiff's conduct before the fact. It is evident therefore, that Plaintiff need not resort to the "extraordinary remedy" of a preliminary injunction in order to garner the relief it seeks. Though Plaintiff further asserts that Defendant cannot cover the potential monetary damages at issue here, Plaintiff cites to no evidence to support that contention.

Additionally, though Plaintiff appropriately cites Winter's standard for a preliminary injunction, it inexplicably fails to make any argument whatsoever as to the balance of the equities and the public interest. This failure, as well as Plaintiff's failure to show irreparable harm, necessarily means Plaintiff has failed to meet the very high burden for a mandatory preliminary injunction. The Motion is denied.

**B. Writ of Attachment**

Plaintiff also seeks a prejudgment writ of attachment pursuant to Rule 64 of the Federal Rules of Civil Procedure and Nevada Revised Statutes § 31.010. Plaintiff wishes to hold the equipment already delivered to "secure its damages, or, alternatively, a writ of attachment, which should attach to the Equipment." ECF No. 20 at 27.

Rule 64 of the Federal Rules of Civil Procedure states, *inter alia*, that "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Subsection (b) of Rule 64 further states that "attachment" is a remedy available under the rule. Nevada law does allow for attachment as a remedy. NRS 31.010. NRS 31.010 allows for a plaintiff to "apply to the court for an order directing the clerk to issue a writ of attachment and thereby cause the property of the defendant to be attached as security for the satisfaction of any judgment that may be recovered, unless the defendant gives security to pay such judgment . . . ." NRS 31.013 details the cases in which a court may order a writ to issue after notice and hearing. NRS. 31.017 details the cases in which a writ may be issued without notice. It states, *inter alia*, that one such case is "[i]n an action by a resident of this State against a defendant not residing in this State." However, it clarifies that "domestic corporations and foreign corporations who are doing business in this State and who have qualified to do business in this State as required in chapter 80 of NRS shall be deemed residents of this State." Additionally, all applications for a writ of attachment without notice are required to include a detailed affidavit. NRS 31.020.

Plaintiff appears to seek a writ of attachment without notice to the defendant, pursuant to NRS 31.017, though it is not entirely clear. See ECF No. 20 at 27-9; ECF No. 27 at 11-12. The Court denies the application for a writ of attachment without notice to Defendant. It is unclear, as

an initial matter, if Defendant qualifies as a domestic corporation that is exempt from the "no notice" provision of NRS. 31.017. Furthermore, the Court was unable to locate in Plaintiff's filings an affidavit in accordance with the statute's requirements.

If Plaintiff wishes to apply for a writ of attachment pursuant to the notice and hearing requirements laid out in NRS 31.013, it may renew its application in a separate filing.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Renewed Motion for Mandatory Injunction (ECF No. 20) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's application for a Writ of Attachment is **DENIED** without prejudice. Plaintiff may re-file the application separately, pursuant to the notice and hearing requirements laid out in NRS 31.013.

DATED: December 11, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**